**James FOX, Plaintiff-Appellant,**

v.

**Margaret M. HECKLER, Secretary of Health & Human Services, Defendant-Appellee.**

**No. 84–1657.**

United States Court of Appeals, Seventh Circuit.

Argued April 24, 1985.

Decided Nov. 5, 1985.

Before COFFEY and FLAUM, Circuit Judges, and GIBSON, Senior Circuit Judge.[*]

COFFEY, Circuit Judge.

James Fox appeals the final determination of the Secretary of Health and Human Services ("Secretary") that he is not disabled. We affirm.

## I.

Mr. Fox, a 43 year old man with an eighth grade education applied for disability benefits and Supplemental Security Income ("SSI") on August 25, 1981 alleging that the complications from injuries he received in automobile accidents in 1967 and 1971 met or were the equivalent of a severe impairment listed in 20 C.F.R. 404.-1598 (1983) and rendered him disabled as that term is used in the regulations. In the alternative, Fox argued that his impairments were so significant and severe as to prevent him from engaging in substantial gainful activity. Fox submitted medical evidence in an attempt to establish the following impairments:

"(1) Herniated Disk, Low Back Derangement with radiculitis; also described as Lumbar myofasciitis; Lumbar Disk Disease;

(2) Severe degenerative arthritis of the left knee with some degenerative changes of right knee; Traumatic arthritis, both legs and feet, Ankylosis of Left Knee;

(3) Contracture of left little finger;

(4) Mental dullness resulting from residuals of head injuries; post-traumatic encepolopathy;

(5) Pain."

In addition, Fox informed the Secretary that for the past one and a half years he had been employed in a sheltered workshop at the Anthony Wayne Rehabilitation Center assembling telephones.

Gregory A. Kahre, Bonahoom, Chapman, McNellis & Michaels, Ft. Wayne, Ind., for plaintiff-appellant.

Joan Leese Lowes, Asst. Regional Atty., Dept. of Health and Human Services, R. Lawrence Steele, U.S. Atty., Ft. Wayne, Ind., for defendant-appellee.

* The Honorable Floyd R. Gibson, Senior Circuit Judge for the United States Court of Appeals for the Eighth Circuit, is sitting by designation.

After Fox's application was denied, he requested a hearing before an administrative law judge who, after holding a hearing and reviewing the evidence, found that Fox's impairments did not prevent him from performing light work and that a significant number of jobs at this exertional level existed in the national economy. Both the Appeals Council of the Department of Health and Human Services and Magistrate Gene Lee, of the United States District Court for the Northern District of Indiana affirmed the administrative law judge's determination that Fox was not disabled. On appeal, Fox argues: (1) the administrative law judge, "disregarded and failed to consider and find whether the combination of the Plaintiff's impairments is medically equal to any listed impairment thereby depriving the Plaintiff of a full and fair hearing on his claim for disability benefits;" and (2) the administrative law judge's decision that Fox is not disabled is not supported with substantial evidence.[1]

## II.

To be considered disabled under the Social Security Act, a claimant must be unable to perform any substantial gainful work due to a medical condition that has existed or can be expected to last for a continuous period of at least 12 months. 42 U.S.C. 423(d)(1)(A). The impairment must be so severe as to prevent the claimant from working not only in the claimant's usual occupation, but in any other substantial gainful work existing in the national economy. 42 U.S.C. 423(d)(2)(A).

"Social Security regulations prescribe a sequential inquiry to be followed in determining whether a claimant is disabled. The following steps are addressed in order: (1) Is the claimant presently unemployed? (2) Is the claimant's impairment 'severe?' (3) Does the impairment meet or exceed one of the list of specific impairments? (4) Is the claimant unable to perform his or her former occupation? (5) Is the claimant unable to perform any other work within the economy? An affirmative answer leads either to the next step or, on steps 3 and 5, to a finding that the claimant is disabled. A negative answer at any point, other than step 3, stops inquiry and leads to a determination that the claimant is not disabled." *Zalewski v. Heckler*, 760 F.2d 160, 162 n. 2 (7th Cir.1985).

### A. The Combination Of Impairments

Fox argues that the Social Security Administration failed to "affirmatively consider and determine on the record the combined disability effects of [his] impairments" and concludes that this alleged failure deprived him of "a full and fair hearing." A disability claimant may be determined to be disabled if he suffers from, "a *combination of impairments* (none of which [individually] meet or equal a listed impairment), each manifested by a set of symptoms, signs, and laboratory findings which, combined, are determined to be medically equivalent in medical severity to that listed set to which the combined sets can be most closely related." Social Security Ruling 83–19 (emphasis in original). "Any decision that an individual's impairment(s) is medically the equivalent of a listed impairment must be based on findings demonstrated by medically acceptable clinical and laboratory diagnostic techniques. Decisions of equivalence are the responsibility of a physician designated by the Secretary." *Id.* The ruling further provides:

"At the initial and reconsideration levels, the signature of the State agency staff physician on the SSA–831–U5/SSA–833–U5 serves as the basis for the determination [of medical equivalency] and assures that consideration by a physician desig-

---

1. Additionally, the plaintiff points to the following passage in the administrative law judge's opinion as a specific finding that Fox had a spinal disorder meeting the criteria of 20 C.F.R. 1.05 C: "However, although the claimant does have a spinal disorder with some evidence of significant motor loss or sensory loss to meet the criteria of that impairment." We disagree. Because the quoted language is but a sentence fragment rather than a sentence, it is obvious that the plaintiff bases his argument on nothing more than an obvious typographical error.

nated by the Secretary has been given to the question of medical equivalence. At the hearing level, the administrative law judge is responsible for deciding the ultimate legal question of whether the listing is met or equaled. As trier of the facts, the administrative law judge is not *bound* by the medical judgment of a 'designated' physician regarding medical equivalency. However, the judgment of a 'designated' physician on this issue on the same evidence before the administrative law judge must be received into the record as expert opinion evidence and given appropriate weight."

*Id.* An examination of the record reveals a "Form SSA–831–U5" signed by one James P. Elkins, M.D. specifically stating: "The severity of the individual's impairment(s) does not meet or equal that of any impairment described in the Listing of Impairments." Moreover, the administrative law judge's opinion addressed Fox's claim:

"[Doctor Reszel] (Fox's treating physician) said that in his medical opinion, the combination of the claimant's impairments would make it extremely difficult for him to be employable. He says mental dullness would make it difficult for him to do any work involving judgment, limitation of dexterity in his hand would make it difficult for him to do work requiring using light tools even in a sitting position, and difficulty with his back and legs would make it difficult for him to do work involving standing or bending or physical strength. He said the claimant's back and knee disorder would make it difficult for him to stand for six hours repeatedly and also to sit for eight hours without significant periods of rest. He concluded that it was his medical opinion that the claimant would not be able to perform in a satisfactory way to be employable in regard to this restriction."

The administrative law judge rejected Dr. Reszel's opinion because his

"conclusions have no support from more specific medical findings. Dr. Reszel admits that his impression that the claimant is mentally dull is only from observation. However, the medical record does indicate that the claimant was given a psychological evaluation and found to have been of normal intelligence. Since Dr. Reszel is not a specialist in psychiatry and did not base his opinion that the claimant was mentally dull on any objective test, his opinion in that regard is given no more weight than the opinion a layman would be given. The claimant did not display any lack of mental ability while he was testifying at the hearing. Although Dr. Reszel seems to think that the claimant's manual dexterity is limited, he bases this opinion on the fact that the claimant has no function of the little finger of his left (non-dominant) hand. It is difficult to see how such an impairment would have any significant effect on the claimant's ability to use his hands. The claimant has, in fact, demonstrated his capacity to work on the small parts involved in working on telephones at his present place of employment and apparently puts out good quality work, although at a less than competitive pace. The reports from Anthony Wayne Rehabilitation Center did not indicate that the claimant's slowness was, in fact, directly due to his physical impairments, but was in fact effected [sic] by his impairments only and directly, through a lack of motivation. Dr. Reszel had indicated that he believes the claimant meets the requirements of Section 1.05 C of the Listing of Impairments and Appendix 1 through Subpart P of Social Security Regulations No. 4. However, although the claimant does have the spinal disorder with some evidence of significant motor loss or sensory loss to meet the criteria of that impairment. [sic]. Dr. Reszel also indicated that the claimant's knee disorder met the requirements of Section 1.03 D of the Listing of Impairments, but that Section refers to ankylosis of the hip outside the position of function. There is no evidence that the claimant has such an impairment of his hip. Furthermore, the claimant has the ability to ambulate and bear weight on his knees, although he walks somewhat awkwardly due to

the limited range of motion of his left knee. But Dr. Reszel's conclusions that the claimant is unable to do any kind of work seem very inconsistent with his previous statements which seemed only to indicate that the claimant was not able to do any prolonged bending or heavy lifting."

■ After reviewing this material we conclude that Dr. Elkin's signature on the Form SSA–831–U5, completed and signed in accordance with the Secretary's normal and usual procedures in evaluating a disability claim, is proof that a physician designated by the Secretary has considered the question of whether the claimant's impairments are medically equivalent to an impairment as described in the Listing of Impairments. Social Security Ruling 83–19. Dr. Elkin's opinion that Fox's impairments did not "meet or equal" that of any impairment described in the Listing of Impairments "must be received into the record as expert opinion evidence and given appropriate weight." *Id.* Moreover, an examination of the administrative law judge's opinion reveals that the administrative law judge specifically acknowledged and rejected Fox's claim that the combination of his impairments rendered him disabled. We therefore hold that Fox's contention that the Social Security Administration failed to affirmatively consider and determine on the record the combined disability effects of his impairments is not supported in the record.

### B. *Sufficiency Of The Evidence*

Finally, we turn to Fox's claim that the administrative law judge's decision was not supported with substantial evidence. "Substantial evidence is evidence that 'a reasonable mind might accept as adequate to support [the] conclusion.' If the record contains such support we must affirm, unless there has been an error of law." *Garfield v. Schweiker,* 732 F.2d 605, 607 (7th Cir.1984) (quoting *Richardson v. Perales,* 402 U.S. 389, 401, 91 S.Ct. 1420, 1427, 28 L.Ed.2d 842 (1971)). Fox argues that the conclusion that he was capable of substan-

tial gainful employment was not supported with substantial evidence because:

"A. The utilization of the Medical-Vocational Guidelines Rule, 202.7 of Appendix 2, Subpart P, Regulation No. 4 was inappropriate in this case due to (1) inconsistency in the findings of the administrative law judge that the plaintiff's residual functional capacity was 'light work,' (2) lack of substantial medical evidence to support the Plaintiff's categorization of 'light work' and (3) the existence of non-exertional impairments of Plaintiff.

B. The administrative law judge improperly discounted or disregarded undisputed evidence that the Plaintiff was earning wages in a sheltered workshop below the presumptive level of substantial gainful activity."

■ To establish inconsistency in the findings of the administrative law judge, Fox contends that the administrative law judge's determination that, "[t]he claimant has the residual functional capacity for at least light work" conflicts with his earlier comment that, "[t]he evidence as a whole indicates that the claimant should be capable of nearly a full range of light work, provided that he is not required to do any significant bending or stooping and has adequate rest periods after standing and working for awhile." According to Fox, these statements conflict because the comment that Fox must have adequate rest periods is an implicit finding that Fox requires more rest than is contemplated for light work and further that he is not capable of the stooping and bending required. However, the Social Security Regulations provide that light work requires frequent walking or standing, from one-third to two-thirds of a work day. Social Security Ruling 83–10. The worker may sit intermittently during the remaining hours of the day. *Id.* Moreover, Social Security Ruling 83–10 points out that the minimal lifting required by light work (frequent lifting of up to 10 pounds and occasional lifting of no

more than 20 pounds) can be accomplished in the majority of jobs involving light work with only occasional bending and stooping. Thus, we hold that a fair reading of the administrative law judge's comments and the context of his opinion as a whole and in light of Social Security Ruling 83–10 is that, while Fox cannot perform all light jobs, he can perform the majority of them —i.e., those that do not require frequent bending or stooping—and that Fox can alternate walking and standing with periods of sitting while performing light work.[2]

As to his contention that the administrative law judge's determination that he was capable of "light work" lacked support with substantial medical evidence, the plaintiff alleges that the administrative law judge distorted the meaning of the report of a consulting physician. Dr. Dennie. Relying upon reports of his treating physician, Dr. Reszel, Fox contends, "none of the reporting physicians determined that the plaintiff is unqualifiably capable of light work, the consulting physicians [Drs. Dennie and Bartel] finding at most a capacity for sedentary work and the two treating physicians [Drs. Reszel and Morgan] finding an inability to engage in any substantial gainful activity." The record reveals that on August 3, 1981, the plaintiff was diagnosed at the Matthew 25 Health Clinic as having "an acute exacerbation of chronic low back pain" and was referred to Dr. Reszel, his treating orthopedic surgeon. On October 17, 1981, Mr. Fox was examined by Dr. Dennie, a consulting orthopedist, who found no muscle spasms or gross neurological abnormalities. X-rays disclosed no significant degenerative changes in the lumbar spine, although some narrow-

ing of the L5–s1 disc space was evident. Dr. Dennie's examination of the claimant's knees found his right knee to have a full range of motion. The left knee range of motion was from 10–65 degrees and x-rays of the left knee were consistent with degenerative changes. No fluid was evident, however. Based on their respective clinical findings, Drs. Reszel and Dennie offered opinions as to plaintiff's residual functional capacity. Dr. Reszel concluded that: "I think this patient's back disorder and knee disorder would make it difficult for him to stand 6 hours repeatedly day in and day out and also to sit for 8 hours without significant periods of rest.... It is still my medical opinion that Mr. Fox would not be able to perform in a satisfactory way at the present to be employable in regard to the above-named restrictions." Dr. Dennie stated, "he should probably be restricted to sedentary-to-light activities, especially ones that could be done in a sitting position not requiring any bending or stooping, carrying, lifting and climbing steps beyond a sedentary type activity level."

 Initially, we note that the administrative law judge's recitation of Dr. Dennie's findings contains a verbatim quotation of his conclusion. We hold that Fox's contention that the administrative law judge somehow distorted the meaning of Dennie's report is patently frivolous because the administrative law judge quoted Dr. Dennie's conclusion. Moreover, in resolving this conflict between the opinions of Drs. Dennie and Reszel, the administrative law judge held, in the passage quoted earlier, that, "Dr. Reszel's conclusions have no support from more specific medical find-

---

2. Fox also contends that the administrative law judge's finding that Fox's "residual functional capacity to perform work-related functions except for work involving lifting heavy weight," conflicts with his finding that Fox is only capable of light work. Fox reasons that a finding that he cannot lift heavy weight, by implication is a finding that he can lift medium weight. He concludes that a finding that he can lift medium weight conflicts with the finding that he can only perform light work because the regulations define light work as "lifting no more than 20 pounds at a time with frequent lifting or carry-

ing of objects weighing up to 10 pounds." Social Security Ruling 83–10. We disagree with Fox's interpretation of the administrative law judge's use of the word "heavy" because the opinion, when read as a whole rather than selectively, fails to demonstrate that the administrative law judge found Fox capable of lifting up to 50 pounds occasionally and 25 pounds frequently, as required in medium work activity. 20 C.F.R. 404.157(c); 416.967(c) (1983). Accordingly, we reject Fox's attempt to "fly-spect" the record for inconsistencies.

ings." Specifically, the administrative law judge rejected Dr. Reszel's impression that Fox is mentally dull because Dr. Reszel, who is not a specialist in psychiatry, based his conclusion on his observation of Fox rather than an objective test. Additionally, the administrative law judge rejected Dr. Reszel's assertion that Fox's manual dexterity is limited because Dr. Reszel failed to elucidate why an impairment to the functioning of Fox's little finger of his non-dominant hand would have a significant effect on the claimant's ability to use his hands. Finally, the administrative law judge rejected Dr. Reszel's contentions that Fox's impairments met Section 1.05 C and 1.03 D of the Listing of Impairments because Dr. Reszel's conclusions were not supported by medical evidence. "An appellate court ... must affirm the Secretary's decision as long as the findings are supported by substantial evidence and the Secretary has applied the correct legal standards." *Zalewski*, 760 F.2d at 163. An administrative law judge must articulate his reasons for rejecting evidence. *Id.* at 166. Because we find both that the administrative law judge has sufficiently articulated his reasons for rejecting Dr. Reszel's opinion and that the administrative law judge's reasons are supported with substantial evidence, we affirm his determination.

We turn now to Fox's assertion that, "[i]nstead of realistically assessing residual functional capacity by taking into account the evidence obtained, as well as other non-exertional impairments, the administrative law judge chose to mechanically apply the 'grids' to determine that the plaintiff was not disabled." In the fifth and last step of the Sequential Evaluation Process, the claimant's residual functional capacity, "RFC," [3] in conjunction with his or her age, education, and work experience, are considered to determine whether the individual can engage in any other substantial gainful work which exists in the national economy. Social Security Ruling 83–10. After con-

sulting the medical-vocational guidelines of 20 C.F.R. Part 404, Subpart P, Appendix 2 ("grids"), the administrative law judge "must then determine the effect of any non-exertional limitations such as psychological impairment on the claimant's residual functional capacity as previously determined pursuant to the grid." *Zalewski*, 760 F.2d at 165; 20 C.F.R. 404.1545(d), 404.1569; 20 C.F.R. Subpart P Appendix 2 Sec. 200.00(a), (e)(2) (1984).

■ Initially, we address Fox's allegation that, "[n]owhere in the opinion of the administrative law judge is there any reference to the plaintiff's pain associated with impairments to his spine and knees...." Contrary to Fox's allegations, a review of the administrative law judge's opinion reveals that he faithfully recited Fox's allegations that he had, "problems with pain in his back and knees since an automobile accident in 1966" and that, "he has to take frequent rest breaks while working because of this back pain." The administrative law judge also noted Fox's reports of pain to Dr. Dennie and to the Matthew 25 Health Clinic. Thus, a mere reading of the administrative law judge's opinion reveals that Fox's assertion that the opinion fails to refer to his pain is groundless. Fox's second alleged non-exertional limitation, impaired mental processes, was rejected by the administrative law judge in the passage quoted earlier in this opinion, because it was not supported by medical evidence. Therefore, the plaintiff has failed to demonstrate that he had non-exertional limitations due to pain and mental impairment. Because the findings of the administrative law judge were supported with substantial evidence in the record, they will not be set aside by this court.

■ Finally, we reach the plaintiff's contention that the "administrative law judge improperly discounted or disregarded undisputed evidence that the plaintiff was earning wages in a sheltered workshop be-

---

**3.** The claimant's residual functional capacity is what he can do despite his limitations. 20 C.F.R. 404.1545(a); 416.945(a) (1983).

low the presumptive level of substantial gainful activity." The portion of the administrative law judge's opinion containing the reference to prior work at a sheltered workshop and objected to by the plaintiff states:

"The evidence as a whole indicates that the claimant should be capable of nearly a full range of light work, provided that he is not required to do any significant bending or stooping and has adequate rest periods after standing and walking for a while. He has, in fact, engaged in substantial gainful activity which was of at least light exertion when he was engaged in the manufacture and repair of wooden pallets and lost his job only because he was laid off because of economic conditions and not because he was unable to do the work. His slowness in performing his present sheltered workshop time for work activity can be explained as easily by a lack of motivation as by physical limitations imposed by his physical impairments. The evidence does not show that his medical condition is to any significant degree worse than it was when he was actually engaged in substantial gainful activity. It may not be advisable for him to return to that specific type of work because it probably does involve more bending and stooping than the claimant should actually be doing, but it does indicate a capacity for at least light work."

A fair reading of the passage reveals that the administrative law judge reasoned (1) the claimant engaged in substantial gainful activity in the past; (2) his present medical condition is not "to any significant degree worse than it was when he was engaged in substantial gainful activity;" (3) "therefore, he should be capable of performing substantial gainful activity at the present time." Fox asserts that his "limited periods of pre-application employment were an unsuccessful trial work attempt" and that he was frequently absent from work be-

cause of his medical problems. However, the administrative law judge's finding that Fox was laid off because of economic conditions was based on Fox's admission at the hearing that he lost his prior jobs because of economic conditions. Moreover, the administrative law judge acknowledged Fox's medical problems when he found that, "[i]t may not be advisable for him to return to that specific type of work," but concluded that Fox was capable of light work. From an independent review of the record, we simply do not agree with Fox's contention that the administrative law judge "discounted" and "disregarded" the evidence.

The decision of the magistrate is AFFIRMED.