Jessie ADAMS, Plaintiff,

v.

Otis BOWEN, Secretary, Department of Health and Human Services, Defendant.

No. 85 C 8726.

United States District Court, N.D. Illinois, E.D.

Oct. 8, 1986.

Thomas Yates, Legal Assistance Foundation of Chicago, Englewood Office, Chicago, Ill., for plaintiff.

Martin Lowery, Asst. U.S. Atty., for the U.S.

## MEMORANDUM OPINION AND ORDER

HOLDERMAN, District Judge:

Plaintiff Jessie Adams instituted this action pursuant to 42 U.S.C. § 1383(c)(3) for review of the final decision of the Secretary of the Department of Health and Human Services (the "Secretary") denying plaintiff's request for supplemental security income ("SSI") benefits. The parties have filed cross-motions for summary judgment. For the reasons stated below, plaintiff's motion for summary judgment is denied and the Secretary's cross-motion will be granted.

Plaintiff initially filed an application for SSI benefits on September 14, 1983. In this initial application, plaintiff claimed that she was disabled due to bronchial asthma and sinus problems. The Secretary denied plaintiff's request after determining that, although she suffered from asthma, plaintiff could return to her past work as a lunchroom attendant/cafeteria worker. (Tr. 50–62.) After plaintiff's request for reconsideration was denied on March 13, 1984 (Tr. 64), plaintiff did not pursue any further appeals.

Plaintiff filed her second request for SSI benefits on June 18, 1984. On this application plaintiff claimed that she was disabled due to heart disease, arthritis, ulcers, asthma and shortness of breath. (Tr. 90.) When this application was administratively denied, plaintiff requested a hearing on her disability claim. The hearing was held on January 14, 1985, at which time plaintiff was not represented by counsel. The administrative law judge ("ALJ") determined that although plaintiff suffers from mild to moderate obstructive pulmonary disease, as well as a variety of other physical ailments, plaintiff's disability does not preclude her from performing her past relevant work. After plaintiff secured counsel, she appealed the decision of the ALJ and submitted to the Appeals Council hospital reports from January of 1985. Nevertheless, the Appeals Council, and thereby the Secretary, adopted the decision of the ALJ as its final decision in plaintiff's case.

In seeking review in this Court, plaintiff contends (1) that the decision of the ALJ that plaintiff is capable of performing her past relevant work is not supported by substantial evidence; and (2) plaintiff is entitled to a new hearing because plaintiff did not voluntarily waive her right to counsel and the ALJ failed to develop adequately the record in this case. The Court will consider each of these arguments in turn.

A. *The ALJ's determination that plaintiff is capable of performing her past relevant work is supported by substantial evidence.*

The decision of the ALJ that plaintiff is capable of performing her past relevant work must be upheld if it is supported by substantial evidence.

■ Substantial evidence has been defined as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401, 91 S.Ct. 1420, 1427, 28 L.Ed.2d 842 (1971). Although a district court reviewing a disability determination by an ALJ should not reweigh the evidence or substitute its judgment for that

of the ALJ, *Johnson v. Weinberger*, 525 F.2d 403, 406–07 (7th Cir.1975), this Court must do more than merely rubberstamp the ALJ's determination. *Garfield v. Schweiker*, 732 F.2d 605, 609–610 (7th Cir.1984). The Court, therefore, has reviewed the testimony provided to the ALJ as well as the physician's reports and other medical evidence submitted by plaintiff both before and after the hearing. The Court's review of the record leads it to conclude that the decision of the ALJ is supported by substantial evidence.

■ The ALJ determined that plaintiff's asthma, hypertension and other ailments constitute a severe impairment, *i.e.* an impairment which significantly limits plaintiff's ability to perform basic work activities. *See* 20 C.F.R. § 416.921. The ALJ concluded, however, that plaintiff's impairments do not meet or equal the severity of any impairment listed in Appendix 1 to Subpart P of the Secretary's regulations. (Tr. 24.) These determinations by the ALJ are not challenged. Having so found, the sequential analysis established by the Social Security Administration for adjudicating disability claims required the ALJ to determine whether plaintiff was capable of performing her past relevant work. The ALJ's finding that plaintiff was so capable resulted in a determination that plaintiff was not disabled. *Cf. Cannon v. Harris*, 651 F.2d 513, 517 (7th Cir.1981).

Here, the evidence regarding the physical requirements of plaintiff's only past relevant work as a lunchroom attendant/cafeteria worker is somewhat confusing. In support of her claim, plaintiff filed four descriptions about her past work. Plaintiff's first description, dated September 14, 1983, stated that plaintiff's job required her to walk 0 hours per day, to stand 3 hours per day, to sit 8 hours per day and never to bend or reach. This job description also stated that plaintiff was required to lift and carry a "pot and one dish or plate at a time." (Tr. 89.) In another job description, plaintiff claimed that her job required her to walk 3 hours per day, stand 3 hours per day, sit 8 hours per day, never bend, and lift up to 10 pounds. (Tr. 97.) In a third description of the same job, plaintiff stated that she was required to walk 8 hours per day, stand 4 hours, sit one hour, occasionally bend and frequently reach. This job description also appears to state that plaintiff was required, more than 4 times daily, to carry a stack of dishes, pots and pans over 12 feet high and weighing more than 128 pounds. (Tr. 103.) Finally, in her most recent disability report plaintiff stated that her job as a "waitress" required her to serve food unto trays and hand the tray of food across a counter to the customer. She stated that the job required her to walk 1 hour per day, stand seven hours per day, sit 0 hours per day and bend and reach occasionally. Plaintiff also stated that she picked up trays weighing 1 to 2 pounds. (Tr. 94–95.)

At the hearing, the ALJ inquired into the physical requirements of plaintiff's past work. Plaintiff testified that she worked 5 hours per day at the job. The ALJ asked: "Okay, and you'd stand most of that time?" Plaintiff responded: "Not most. I had a high stool. It was sitting by me, so when nobody was there, I could sit on it. Sometimes I'd sit on it and pas[s] out food." (Tr. 39.) The ALJ also inquired about plaintiff's present physical capabilities:

Q. Okay, how far can you walk now if you want to? It's kind of a rough day today.

A. Well, I could [walk] about five block[s]....

Q. Can you be on your feet for two hours at a time?

A. No, not (INAUDIBLE).

\* \* \* \* \* \*

Q. How much weight can you lift up using both hands?

A. About twenty pounds, I think. I can't hold it very long.

The ALJ found this testimony of the plaintiff to be credible. (Tr. 28.)

Plaintiff argues that the ALJ's determination that plaintiff's testimony is credible is inconsistent with his determination that

plaintiff is capable of performing her past relevant work, since that work was classified as light work by a vocational assessment specialist. (Tr. 118.) *See* Plaintiff's Mem. in Support, pp. 6–7.

Plaintiff is mistaken. As an initial matter, the ALJ's holding turned on his determination that plaintiff's job as a lunchroom attendant, a 5 hour per day job where plaintiff was admittedly not required to stand most of the day, was performable by a person with plaintiff's limitations. The record adequately supports this determination. Besides plaintiff's own testimony, the record contains three residual functional capacity assessments completed by three different doctors. Each doctor independently determined that plaintiff could stand or sit about 6 hours per day and frequently perform a wide range of physical movements. (Tr. 144–147, 187–191, 192–193.) In short, the ALJ's holding was not that plaintiff is capable of performing a wide range of jobs that would be classified as "light" work under the Secretary's regulations, but only that plaintiff is capable of performing her past relevant work.

Furthermore, the ALJ's acceptance of plaintiff's assertion that she could sometimes stand for only two hours at a time is not inconsistent with the statement (made within his opinion but not a part of his Findings) that plaintiff has the "physical capacity for light and sedentary work." (Tr. 27.) Plaintiff contends that, because the social security regulations define light work as involving approximately 6 hours out of an 8 hour work workday, plaintiff's inability to stand for more than 2 hours at a time precludes a finding that she is capable of light work. Plaintiff's Mem. in Support, pp. 6–7.

Plaintiff's argument is similar to the primary arguments offered recently by the plaintiffs/appellants in *Nelson v. Secretary of Health and Human Services,* 770 F.2d 682 (7th Cir.1985) and *Fox v. Heckler,* 776 F.2d 738 (7th Cir.1985). In *Nelson* plaintiff argued that the ALJ's findings that Nelson could not finely manipulate her hands, bend or squat, lift objects weighing more than twenty pounds, or stand or walk more than one to four hours per day was "fatally inconsistent" with the determination that she was capable of doing light work as defined in the regulations. The Seventh Circuit, in a *per curiam* opinion, rejected plaintiff's argument:

We are not persuaded that these findings are inconsistent with the conclusion that Nelson is capable of performing light work. With the exception of being able to use her right foot for repetitive movements, it appears that Nelson is capable of engaging in all of the activities which are by definition associated with light work. She is, for example, capable of lifting up to twenty pounds; walking and standing up to four hours per day; and using both arms and her left foot for pushing and pulling of arm or leg controls. Nelson's ability to engage in these activities satisfies the regulation's requirement that the worker must be capable of performing "substantially all" of the activities associated with light work.

770 F.2d at 684. *See also* 20 C.F.R. § 416.967(b).

Similarly, in *Fox,* the plaintiff/appellant argued that the ALJ's determination that " '[t]he claimant has the residual functional capacity for at least light work' " was inconsistent with his comment that " '[t]he evidence as a whole indicates that the claimant should be capable of nearly a full range of light work, provided that he is not required to do any significant bending or stooping and has adequate rest periods after standing and working for awhile.' " 776 F.2d at 742. Fox argued that the ALJ's statements conflicted because "the comment the Fox must have adequate rest periods is an implicit finding that Fox requires more rest than is contemplated for light work and further that he is not capable of the stooping and bending required." *Id.*

The Seventh Circuit rejected Fox's argument that the ALJ's findings were inconsistent:

[T]he Social Security Regulations provide that light work requires frequent walk-

ing or standing, from one-third to two-thirds of a work day. Social Security Ruling 83–10. The worker may sit intermittently during the remaining hours of the day. *Id.* Moreover, Social Security Rule 83–10 points out that the minimal lifting required by light work (frequent lifting of up to 10 pounds and occasional lifting of no more than 20 pounds) can be accomplished in the majority of jobs involving light work with only occasional bending and stooping. Thus, we hold that a fair reading of the administrative law judge's comments and the context of his opinion as a whole and in light of Social Security Ruling 83–10 is that, while Fox cannot perform all light jobs, he can perform the majority of them—i.e., those that do not require frequent bending or stooping—and that Fox can alternate walking and standing with periods of sitting while performing light work.

776 F.2d at 742–43.

For similar reasons, plaintiff's argument here must fail. The ALJ's finding that plaintiff cannot stand for more than 2 hours at a time is not inconsistent with his statement that she can perform substantially all of the activities associated with light work. A fair reading of the ALJ's opinion as well as the evidence in this case is that, although plaintiff cannot perform all jobs which fall within the category of light work, she can perform most of them, and can alternate walking and standing with periods of sitting.

B. *The ALJ adequately developed the record in this case.*

■ Plaintiff's second claim is that she was not adequately apprised of her right to counsel at the hearing, and that the ALJ did not cure this defect by adequately " 'prob[ing] into, inquir[ing] of and explor[ing] for all the relevant facts.' " Plaintiff's Mem. in Support, p. 9, *quoting Vance v. Heckler,* 579 F.Supp. 318, 321 (N.D.Ill.1984). The Court disagrees. Even assuming *arguendo* that plaintiff was not adequately apprised of the benefits of counsel, the Court believes that the ALJ did an adequate job of developing the record in this case.

Plaintiff claims particularly that the ALJ: (1) failed to inquire into the physical requirements of her past work; (2) failed to fully inquire into her present physical disabilities by failing to secure additional hospital records; and (3) failed to comprehensively examine plaintiff. The Court disagrees with each of these contentions. The ALJ properly inquired into the nature of plaintiff's previous work and the amount of time plaintiff spent standing and sitting. Moreover, given the presence of four separate job descriptions, each completed by the plaintiff, within the list of exhibits, the ALJ may well have believed that he had a sufficient grasp of what plaintiff would say regarding the physical demands of her job. The record reveals that shortly before the hearing commenced, the ALJ's assistant went over the list of exhibits that would be included in the record. (Tr. 36.) There is no indication in the transcript that plaintiff believed any of the exhibits to be outdated, inaccurate or incomplete.

Next, plaintiff contends that the ALJ should have secured certain medical records referred to by the claimant during the course of the hearing. Plaintiff contends that the following testimony should have put the ALJ on notice that more medical evidence regarding plaintiff's claims was available and should be secured:

Q. What hospital did you go to this past year?

A. I been to the County and I been to Community Hospital. That's on 57th and Wards (phonetic), the other county.

Q. Okay, and have you gone to the Community Hospital more than once this past year?

A. Uh-uh, I just went once. Because my doctor—they tell me when I go they say—see my doctor—it's almost on the same block I live on, you know.

Q. Okay, the County Hospital last year, about how many times did you go to County Hospital?

A. About 3 or 4, yeah.

**144**

Q. Okay, and what did they do for you at the County Hospital?

A. They were checking all over me and put liquid fluid in my arm.

Q. Okay, were you an outpatient at the County or an inpatient?

A. I was an outpatient.

Q. And at the Community Hospital, you were an outpatient, also?

A. Yes.

The Court is not convinced that the ALJ was under an obligation to secure, or have the plaintiff secure, medical records from either Cook County or Community hospitals. As an initial matter, almost all of the medical evidence in this case supported the same conclusions regarding the existence and nature of plaintiff's maladies: the ALJ may well have believed that further records were not needed. Moreover, the plaintiff's testimony supports the conclusion that her stays at Community and Cook County were too short to have resulted in any extended testing being conducted. Finally, the Court notes that the medical records at issue were not among those sent by counsel for plaintiff to the Appeals Council for consideration after the ALJ's decision, and the medical records were not made part of the record submitted in this case. Given the plaintiff's conflicting reports to her examining doctors regarding the dates of her various hospital stays (Tr. 133, 149, 170), the Court is even unsure whether such hospital records actually exist.

Finally, the Court believes that the ALJ's examination of the claimant, although brief, was adequate. Often a hearing is lengthened by the presence of counsel for the claimant, family members or vocational experts, which was not the case here. Plaintiff was asked by the ALJ whether she had anything to add to her testimony or whether there were areas of inquiry that the ALJ had failed to touch upon: plaintiff responded that she could not think of anything except the problems she has when she is missing her eyeglasses. (R. 47.) In sum, the Court believes the ALJ adequately inquired into plaintiff's physical disabilities, former job duties and present capacity to work.

## CONCLUSION

For the reasons set forth above, plaintiff's motion for summary judgment is DENIED. The Secretary's cross-motion for summary judgment is GRANTED.